STATE v. HULLEN.

(Filed October 6, 1903.)

1. LARCENY—*Evidence—Possession.*

In an indictment for larceny, evidence that the defendant had in his possession goods stolen at the same time at which those were stolen for which he was indicted is competent.

2. LARCENY—*Recent Possession—Evidence.*

In an indictment for larceny of goods from a dwelling in the daytime, recent possession by the defendant of the stolen goods is a circumstance tending to prove that the defendant entered the dwelling from which the goods were stolen.

3. LARCENY—*Punishment—Acts 1895, ch. 285.*

Acts 1895, ch. 285, limiting the punishment in certain cases of larceny, is not applicable to larceny from the dwelling by breaking and entering in the day-time.

STATE *v.* HULLEN.

INDICTMENT against Hunch Hullen, heard by Judge *R. B. Peebles* and a jury, at March Term, 1903, of the Superior Court of NEW HANOVER County. From a verdict of guilty and judgment thereon the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*B. G. Empie,* for the defendant.

WALKER, J. The defendant was indicted for breaking and entering the house of the prosecutor and stealing a watch therefrom. There were two counts in the bill, one for breaking and entering with intent to steal the goods and chattels of the prosecutor and the other for breaking and entering with intent to steal his goods and chattels, and actually stealing from the said house one watch, the property of prosecutor's daughter.

The evidence tended to establish the following facts: That the prosecutor's house was entered on January 19, 1903, about the dinner hour, and several articles were taken and carried away, among them being a watch and a brown leather pocket-book with silver fringe around the corners. The day after the house was entered the defendant and one Wash McNeill, who was indicted with him and acquitted, were seen together at the C. C. R. depot in Wilmington by Thomas Hawkins, a witness for the State. McNeill offered to sell Hawkins a silver watch for ninety cents, and the offer was accepted, but the defendant had nothing to do with the sale. This watch was identified by the prosecutor at the trial as the one which had been taken from his house, and he testified that it was worth $7.50. McNeill had two gold watches and offered to sell one of them to William Jones, who bought it and then returned it, as his suspicion had been aroused by the cheapness of the watch. McNeill got the two gold watches and the silver watch, about the time the property was stolen from the prosecutor's house, from the defendant, who asked him to

sell them for him and divide the profits. McNeill was not in the part of the city where the prosecutor lived on the day the house was entered. The defendant on that day was seen by one Joe Hill at an old lot about three and a half blocks from the prosecutor's house, and Hill talked with him. "Hullen pulled from his pocket a leather pocket-book and removed the silver or metal edges from it." Hill asked him why he did that and he said that he did not like fancy pocket-books. The defendant did not introduce any evidence. His counsel objected in apt time to the evidence concerning the pocket-book because it was irrelevant, and also because the pocket-book had not been identified and was not mentioned in the indictment.

The defendant requested the Court to charge the jury as follows:

First. That as there were two counts, one for breaking into the dwelling in the day-time and stealing therefrom a watch and the other for stealing a watch, and as there was no evidence that Hullen had ever been seen near the house of Fowler, nor that he had ever been seen or found with the stolen property, the jury should not consider the first count in the indictment against the defendant Hullen, viz., house-breaking. As to the second count for stealing a watch, that, unless they believed the unsupported and bare statement of McNeill, a co-defendant and interested, as there was no evidence against him by the State's witnesses, they should acquit Hullen on the second count.

Second. That the jury, in the absence of the pocket-book and its identification, cannot assume that the book was the pocket-book taken from the residence of Fowler, and Hullen's possession of it cannot be taken as evidence showing that Hullen entered the dwelling of said Fowler, and Hullen should be acquitted on the first count.

Third. Taking the whole evidence, it showed only a scin-

tilla, and was not, therefore, sufficient to be submitted to the jury, and Hullen should be acquitted.

These instructions were refused by the Court and the defendant excepted.

We have made a brief statement of what the evidence tended to show, not because the facts set forth were actually established by the proof, for whether they were so established was a matter within the exclusive province of the jury to decide, but in order to show some evidence sufficient, as the law regards it, to be submitted to the jury upon the question of defendant's guilt.

If the jury believed the evidence, it tended to show that the defendant was in possession of the watch on the day after the house was entered. The only testimony introduced to established this fact, it is true, was that of the witness McNeill, and it may be that the jury should not have believed him, but whether he was credible or not was a question solely for the jury, and we cannot pass upon it. We also think that the testimony of the witness Hill as to the leather pocket-book was competent. It related to a fact which the jury were entitled to consider with the other facts and circumstances in the case. It is contended that the pocket-book was not sufficiently identified. It may be that the evidence in this respect and of itself was not very complete or of a very conclusive nature, but still we think it was sufficient for the jury to consider upon the question of identity. *State v. Bruce,* 106 N. C., 792; *State v. Kent,* 65 N. C., 311. The general description of the pocket-book as given by the witness Hill and that given by the prosecutor corresponded, and this correspondence, together with the further fact testified to by the witness McNeill that he got the watch from the defendant Hullen, which was fully identified by the prosecutor and which was stolen at the same time as the pocket-book, was quite sufficient as legal evidence of the identity of the pocket-book. The

evidence as to the pocket-book was not incompetent because the pocket-book was not mentioned in the indictment. The evidence was introduced, not to convict the defendant of stealing the pocket-book, but for the purpose of showing his possession of one piece of the stolen property, as tending to prove that he stole the articles described in the bill, which were taken at the same time. *State v. Patterson,* 78 N. C., 470; *State v. Jeffries,* 117 N. C., 727; *State v. Bruce, supra; State v. Kent, supra.*

This Court has said that "it is an established rule of evidence that when, on a trial for larceny, identity is in question, testimony is admissible to show that other property which had been stolen at the same time was also in the possession of the defendant when he had in his possession the property charged in the indictment." *State v. Weaver,* 104 N. C., 760; McClain's Cr. Law, sec. 514.

This case in its peculiar facts and circumstances resembles very much the case of *State v. Bruce, supra.* There was no error in the admission of testimony.

We will now consider the effect of the evidence introduced by the State. Recent possession of stolen property has always been considered as a circumstance tending to show the guilt of the possessor on his trial upon an indictment for larceny. It is not necessary that we should here draw any nice distinctions concerning the presumptions of guilt based on recent possession as being strong, probable or weak, because the Court in its charge, to which there was no exception, instructed the jury that the recent possession of the defendant was only a circumstance to be weighed by them in passing upon his guilt, and this charge is sustained, we believe, by all the authorities. *State v. Graves,* 72 N. C., 482; *State v. Rights,* 82 N. C., 675; *State v. Jennett,* 88 N. C., 665; *State v. McRae,* 120 N. C., 608, 58 Am. St. Rep., 808. If recent possession of the stolen goods is evidence that defendant com-

mitted the larceny it must also of necessity be evidence of the fact that the defendant broke and entered the house, because it is evident that the larceny was committed in the house by the person who broke and entered it, and there is no evidence that it was committed in any other way. *State v. Graves, supra.* "If the breaking and entering are charged as with the intent to commit larceny, the possession by the defendant, soon after the crime, of goods shown to have been stolen from the premises broken and entered tends to show that defendant is the one who committed the burglary, unless such possession is in some way explained." McClain's Cr. Law, sec. 514.

It follows from what we have said that the Court below was right in refusing the defendant's prayer for instructions.

The defendant also excepted upon the ground that under chapter 285, Acts 1895, the sentence of three years imprisonment was excessive, as under that act the punishment cannot exceed imprisonment for a longer term than one year when the value of the stolen property does not exceed twenty dollars. But upon examination of that act it will be found that it does not apply to cases of "larceny from the dwelling by breaking and entering in the day-time."

Our conclusion is that there was no error in the rulings of the Court below and there is none in the record. It will be so certified.

No error.